## McGEE v. JONES.

1. CASE FOR APPEAL.—Attention called to the necessity of presenting in the "Case" for appeal every material fact, as no matters can be considered by this court when not so presented, unless they are agreed upon by counsel at the hearing.

2. FINDINGS OF FACT.—This court rarely interferes with findings of fact by the Circuit Judge based upon conflicting testimony taken by the master in an equity cause.

3. A Purchaser under Execution with Notice of a prior voluntary deed made to defeat existing creditors of the grantor is invested with the rights of the creditor under whose execution, subsequently obtained, he purchased at sheriff's sale, and may maintain action to cancel such fraudulent conveyance.

4. Limitation of Actions.—This action having been commenced within three years after plaintiff's purchase at the sheriff's sale, and within the same time after notice to the execution creditor of the fraudulent transfer, it is not barred by the statute of limitations, whether it be regarded as an action for the recovery of the land, or as an action to set aside the voluntary deed for fraud.

Before Izlar, J., Abbeville, June, 1890.

This was an action by M. B. McGee against D. S. Jones and his wife and children to cancel a deed and recover the land. The Circuit decree, after stating the undisputed facts of the case, concludes as follows:

After consideration of the testimony, I am satisfied that the deed made by D. S. Jones of the land above mentioned and described in the complaint was without consideration and was made especially to defeat the Rasor claim, and with the understanding on the part of Henderson, his grantee, that there should be a reconveyance to Jones's family. Jones still returned the land in his own name for taxation, paid no rent, and the deeds were not recorded until January 26, 1884, a few days before the sheriff sold the land. I am further satisfied that the deed from Henderson to Mrs. Jones and the children of Jones was made as part of the original understanding between Jones and Henderson. No money was paid by the family to Henderson when he conveyed. It was an attempt to save Jones's land, the only property he owned, and all that could be reached by his creditors. Jones is unable to pay his debts, and the Rasor judgment is still unpaid, there being no other property out of which the money can be made. The plaintiff occupies the position of the Rasors in so far as being able to attack the deeds is concerned. Granting that he knew of the deeds and of the transactions between Jones and Henderson, as he admits, he, the plaintiff, bought at a sale by the Rasors, who had no notice except the recording of the two deeds and the notice given at the time of the sale by the sheriff.

I find as matter of fact : 1. That David S. Jones was insolvent at the time he conveyed his land to M. C. Henderson, and is now unable to pay his debts, and has no other property subject to levy and sale.    2. That the deed to M. C. Henderson, made on January 1, 1878, was without consideration, and was intended to defraud the creditors of Jones, and especially the Rasors.    3. That the deed of M. C. Henderson of the same land to Mrs. Jones and the children of D. S. Jones was also fraudulent and intended for the same purpose.

As matter of law : 1. That the plaintiff can make this action. 2. That the deeds above mentioned should be set aside and cancelled, and the clerk is hereby ordered to cancel the said deeds, and also the records of the same in his office.

Defendants appealed upon the grounds stated in the opinion of this court.

*Messrs. Graydon & Graydon*, for appellants.

*Messrs. Benet & Cason*, contra.

June 17, 1891.    The opinion of the court was delivered by

Mr. Justice McIver.    On the 1st day of January, 1878, the defendant, David S. Jones, being indebted at the time to one Ezekiel Rasor, conveyed by a deed in which the consideration stated was six hundred and fifty dollars, to his father-in-law, Mason C. Henderson, the tract of land which is the subject of this action.    Jones retained the possession of this land, paying the taxes thereon up to the time when it was sold by the sheriff, as will be hereinafter stated, and still retains such possession. After the death of said Ezekiel Rasor, his executors recovered a judgment on said debt against David S. Jones in March, 1882, and under that judgment the land was sold by the sheriff on the 4th day of February, 1884, and bid off by said executors, who transferred their bid to the plaintiff in this action, and he having paid the same, took titles from the sheriff and an assignment of the judgment from said executors, which was not paid in full by the proceeds of the sale.

In the meantime, however, Mason C. Henderson, a day or two

before his death, to wit, on 16th of October, 1882, conveyed the said land to the defendant, Nancy R. Jones, the second wife of David S. Jones (who does not appear to have been in any way related to said Mason C. Henderson), and to the children of David S. Jones by his first wife, who was the daughter of said Mason C. Henderson, all of whom are parties defendant to this action. At the sheriff's sale the attorneys for defendants gave public notice of these conveyances, which had been put on record on the 26th day of January, 1884—a few days before the sale—and forbid the sale upon the ground that the land did not belong to the judgment debtor, David S. Jones, but belonged to his wife Nancy and the children of his first marriage.

The plaintiff in his complaint alleges that these conveyances were really without any consideration, and were made with intent to hinder, delay, and defraud the creditors of said David S. Jones in the enforcement of their claims, especially the Rasor claim above mentioned; that the said David S. Jones had no other property except the land in question, out of which his creditors could obtain satisfaction of their claims; and that said David S. Jones is still unlawfully in possession of said land and unlawfully withholds the same from plaintiff. Wherefore he demands judgment that the said conveyances be declared fraudulent and void as to the plaintiff, and that the same be set aside and cancelled, and that plaintiff may recover possession of said land. The defendants answered, denying all fraud, alleging that plaintiff knew all the facts and circumstances connected with said conveyances long before the sale by the sheriff, and he took his title with full knowledge thereof, and that they, together with Mason C. Henderson, have had peaceable and quiet possession of said land for more than nine years next preceding the commencement of this action.

It is very singular, however, that, although the statute of limitations is relied upon as one of the defences to this action, we have been unable to find anything whatever in the "Case" to show or even indicate when this action was commenced; and surely this is material to the determination of such a defence. It is true that the appellants do, *in their argument*, say that the action was commenced on the 5th of February, 1887, but this, as we have often had occasion to say, is

not sufficient. But inasmuch as the respondent's counsel, in their argument, say that the action was commenced in 1887, we suppose we may regard this as an admission that the action was commenced some time during that year. But we must again take the occasion to call the attention of the bar to the importance of this matter, and urge the necessity, imperatively required, that every fact deemed material shall appear *in the* "*Case,*" as otherwise it cannot be considered, unless admitted in the argument here. This court is very averse to being compelled to decide a case without considering some material fact, which, however well known to counsel, cannot be noticed by the court unless brought to its attention in the manner prescribed by well settled rules.

The testimony in the case was taken and reported by the master, and the case was heard by his honor, Judge Izlar, upon the pleadings, the testimony so reported, and the argument of counsel, who rendered his decree, finding as matter of fact that David S. Jones was insolvent at the time he made the conveyance to Mason C. Henderson, and is now unable to pay his debts, having no property subject to levy and sale; that said conveyance was without consideration, and made with intent to defraud the creditors of said David S. Jones, especially the Rasors; and that the deed of Mason C. Henderson to the other defendants was intended for the same purpose and was fraudulent. And as matter of law he found that plaintiff could maintain this action, and that the deeds above mentioned should be set aside and cancelled, and that the clerk be required to cancel the same as well as the records thereof.

From this judgment defendants appeal upon the several grounds set out in the record, which substantially impute error to the Circuit Judge, 1st. In his findings of fact above stated. 2nd. In his conclusion of law that one who purchases land with notice of a prior voluntary deed has the right to bring an action to set aside such deed. 3rd. In finding that the plaintiff purchased at the sale of Rasor, who had no notice, when the evidence was that the deeds were recorded before the sale and express notice was given at the sale, and that the same was made by the sheriff and not by Rasor. 5th. In disregarding or overruling the plea of the statute of limitations.

So far as the errors assigned in the findings of fact are concerned, they may be disposed of by the single remark that where, as in this case, there was a conflict of testimony, this court rarely, if ever, interferes with the findings of fact by the Circuit Judge, even where the testimony is taken and reported by a referee or the master. *Gary* v. *Burnett,* 16 S. C., 632.

2nd. We do not understand that the Circuit Judge held in broad terms, as stated in this assignment of error, that one who purchases land with notice of a prior voluntary conveyance has the right to bring an action to set aside such conveyance. On the contrary, as we understand the decree, the judge held that notwithstanding the fact that plaintiff had notice, yet as the Rasors had no notice except that derived from the recording of the deeds a few days before the sale and that given at the sale, the plaintiff occupied their position, and if they had no such notice as would be sufficient to defeat them, the plaintiff would be protected by their want of notice ; and in this we think there was no error. It is well settled that if one with notice purchases from another who had no notice, he succeeds to all the rights of his grantor and is protected. See 2 Pom. Eq. Jur., § 754 ; *Jones* v. *Hudson,* 23 S. C., 494, recognized in *London* v. *Youmans,* 31 *Id.*, 147. As it is well expressed by Johnston, Ch., in his Circuit decree in *Dopson* v. *Harley,* reported in a note to *Brown* v. *Wood,* 6 Rich. Eq., 176 : "When in tracing a title in defendants you come upon an innocent purchaser having no notice, from that moment the title is secure in equity ; under which principle a purchaser with notice from one without notice is protected in this court." The reason of this rule is "to prevent a stagnation of property, and because the first purchaser being entitled to hold and enjoy must be equally entitled to sell." Per Kent, Ch., in *Bumpus* v. *Platner,* 1 Johns. Ch., at p. 220. For if a person with notice could not safely buy from an innocent purchaser without notice, it is very obvious (to borrow the idea of Kent, Ch., *supra*) that the property would be *stagnant* in the hands of such innocent purchaser, who could not exercise one of the rights of ownership—that of sale—for when he offered it for sale, especially at public outcry, all that would

be necessary to drive off purchasers would be to give notice at such sale, and this would effectually defeat the attempt to sell.

This principle, by which purchasers are protected, may be and has been applied, in the case of *Massey* v. *McIlwaine* (2 Hill Ch., 421), to the protection of creditors. For as was said by Johnston, Ch., in his Circuit decree: "If the creditors had the sale of the land in their power, a sale by them to a person infected with notice was as good as if made to one who had no notice at all. To say otherwise would put it in the power of one first to obtain credit, and then, by giving general notice, to defeat the creditor of his remedy, by cutting off all purchasers under the creditor's execution. The well known principle that one infected with notice may safely purchase from and protect himself under another destitute of notice, is of easy application to this case." It is true that this Circuit decree was reversed by the Court of Appeals, but it was on another wholly different ground; and the Court of Appeals, so far from indicating any dissatisfaction with the doctrine as stated in the quotation from the Circuit decree above, expressly approve it.

From what has been said above, it is very manifest that the fact relied upon by appellant's counsel, that the Rasors, as well as the plaintiff, had *notice at the time of the sale* by the recording of the deeds a few days before the sale, and by the public notice given at the sale, is of no consequence whatever. David S. Jones acquired credit from Rasor upon the faith of this land, and his subsequent conveyance, intended to hinder, delay, and defraud his creditors, certainly would not prevent his creditors from following the land into the hands of his fraudulent grantee, and when the same is offered for sale under the execution of the creditors, no notice given at or before such sale can affect the validity of such sale even to one who had full notice. As is said in. the opinion of the Court of Appeals in *Massey* v. *McIlwaine,* *supra*, the purchasers at such execution sale "are not only invested under their purchase with all the rights of King (the judgment debtor), but they are also clothed with the rights of his creditor, at whose instance the land was sold. The creditor has the right to have his debt satisfied out of the property of his debtor, and if it is sold under execution for that purpose, the pur-

chaser is invested not only with the rights of the debtor, but those of the creditor also, which is in some degree peculiar. If, for example, the debtor convey lands after judgment signed against him, or even before, when he conspires with the purchaser to defraud his creditors, a purchaser at sheriff's sale, at the instance of the creditor, is entitled to prevail against the voluntary alienee of the debtor, notwithstanding the legal estate of the debtor had been before divested by his voluntary alienation; and in that case the rights of the purchaser are derived from the creditor."

It only remains to consider whether there was any error in disregarding or overruling the plea of the statute of limitations. If this case be regarded simply as an action to recover the possession of the land in question, which, it would seem, would have been the proper action, then it is clear, under the recent case of *Amaker* v. *New* (33 S. C., 28), that the plea of the statute would be of no avail to the defendants. But as the action seems to have been treated below, and in the argument here, as an action to set aside fraudulent deeds, we will consider the question under that aspect. It is settled by the case of *Suber* v. *Chandler* (18 S. C., 526), that the statute runs from the discovery of the fraud, only where a right of action also then exists. So that granting that plaintiff here had notice of the fraud for a longer period than six years before the commencement of the action, that would not be sufficient to bar his right of action, unless such right of action then existed. Now, it is quite clear that the plaintiff never had any right of action until his purchase in 1884, and as the action was commenced within three years thereafter, it follows that the bar of the statute does not apply. Furthermore, there is no evidence that the Rasors had any notice whatever until the sale in 1884, and hence the statute would not bar their right of action, and regarding the plaintiff as standing in their shoes, he would not, as holding their rights, be barred.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.